GENERAL ELECTRIC CO. v. SUTTER et al.

(Circuit Court of Appeals, Third Circuit. March 4, 1912.)

No. 1,489.

1. PATENTS (§ 328*)—INVENTION—ELECTRICAL TRANSFORMER.
    The Hall patent, No. 829,780, for an electrical transformer, differing from prior structures only in the substitution of eccentric for concentric coil mounting, is void for lack of invention.

2. PATENTS (§ 16*)—INVENTION—ELECTRICAL TRANSFORMER.
    The work of a trained electrical engineer, who, following general directions given by his superior officer, made certain changes in an electrical transformer for the purpose and with the result of effecting econ-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

omies in construction, without departing from known principles, *held* not to have involved invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 15; Dec. Dig. § 16.*]

3. PATENTS (§ 20*)—INVENTION—ELECTRICAL TRANSFORMER.

The substitution in an electrical transformer of eccentric for concentric coil mounting did not involve patentable invention, in view of the fact that the general principles and practice of ventilating spaces in transformers were well known, and the desirability of keeping the transformer coils close together within the magnetic circuit for electrical advantages and of separating them outside the circuit for ventilating purposes.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 20-22; Dec. Dig. § 20.*]

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

Suit in equity by the General Electric Company against Frederick C. Sutter and others, trading as the Pittsburgh Transformer Company. Decree for defendants, and complainant appeals. Affirmed.

Charles Neave and William G. McKnight, for appellant.
Edwards, Sager & Wooster, for appellees.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case the General Electric Company, owner of patent No. 829,780, issued to Walter A. Hall, August 28, 1906, for an electrical transformer, charged Sutter and others with infringement thereof. The court below held the patent did not involve invention, and from a decree dismissing the bill the General Electric Company appealed to this court.

[1, 2] We find no ground to warrant our differing from the court below in that conclusion. Conceding the device was original with Hall, and that it involved economies of construction, a study of the testimony satisfies us of the absence of any and all of those features which ordinarily betoken invention. There was no recognized fault in transformers which the electric art was seeking *to correct*. The necessity and advantages of open spaces in transformers were well known. Moreover, the prior art showed the advantage of keeping the transformer coils close together within the magnetic circuit and of separating them outside of it for ventilating purposes. Indeed, a study of the testimony shows that Hall's device was simply the thoughtful work of a trained electrical engineer who, when directed by his superior officer "to investigate to see what economies might be introduced as a result of modifying our practice, so as to use internal ducts in transformers of sizes of, say, 25 to 30 kilowatts," did so; or, to quote the words of that officer:

"One of my assistants, W. A. Hall by name, was given the problem to investigate. After considerable study, he submitted designs and finally built a model along the lines that I have just described. The design was so much more efficient, and cost much less money than what he had previously used, that it was adopted and embodied in our regular production some time in the latter part of the year 1902."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[3] The only novelty claimed by Hall in his patent was in substituting eccentric for concentric coil mounting, and the only advantage therein alleged was in economy of construction, and that the coils, instead of—

"being located concentrically, as heretofore, the two outer coils are arranged so that a wider ventilating space is formed at one side of the core than at the other."

The case, then, narrows down to the question whether the substitution in a transformer of eccentric for concentric coil mounting involved invention. In view of the fact that the general principles and practice of ventilating spaces in transformers were well known, and the desirability of keeping the transformer coils close together within the magnetic circuit for electrical advantages, and of separating them outside the circuit for ventilating purposes, we cannot regard Hall's eccentric coil mounting as other than simply an economical improvement, designed by an engineer skilled in that highly developed art.

The decree of the court below is affirmed.